# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MANUFACTURERS AND
TRADERS TRUST COMPANY,

    Appellant,

    vs.

WYOMING SAND AND STONE
COMPANY and TRAVELERS
CASUALTY AND SURETY
COMPANY,

    Appellees,

CIVIL ACTION NO. 3:05-CV-604

(JUDGE CAPUTO)

## MEMORANDUM

Manufacturers and Traders Trust Company (M&T Bank) appeals from a decision of the United States Bankruptcy Court for the Middle District of Pennsylvania granting summary judgment to Travelers Casualty and Surety Company (Travelers) and denying summary judgment to M&T Bank, and holding that M&T Bank had released its security interest in the Debtor's vehicles under the circumstances of this case.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8001(a).

The parties agree that the standard of review is plenary. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002).

## BACKGROUND

On January 8, 2003, Wyoming Sand and Stone Company (Debtor) filed a voluntary Petition for Relief under Chapter 11, Title 11 of the United States Bankruptcy Code.

This appeal arises out of an adversary proceeding wherein M&T Bank and Travelers contested entitlement to proceeds *inter alia* from the sales at auction of certain vehicles of the Debtor held in October 2002 and October 2003.

The background of the adversary proceeding is as follows. In August 1999, Debtor entered into loan agreements with M&T Bank which were secured by security interests in Debtor's vehicles. In September 2002, Debtor retained Hunyady Auction Services Company (Hunyady) to auction Debtor's vehicles not previously sold privately. As part of this process, and in advance of the auction, the president of Debtor requested that M&T Bank execute releases of the liens on the titles of the vehicles to be sold at the auction, and at the same time Debtor's president told M&T Bank that the proceeds of the auction would be used to reduce the indebtedness to M&T Bank on the loans they secured. M&T Bank executed releases of the liens on the vehicles and delivered the certificates of title to Hunyady. The auction took place in October 2002. M&T Bank received proceeds from the auction and held them while it determined where to apply them. Before doing so, Debtor filed its Chapter 11 petition in January 2003.

Vehicles remained which were not sold privately or at the 2002 auction. In August, 2003, M&T Bank retained Hunyady to conduct an auction of these remaining vehicles.

Prior to this, in January 2003, after the Chapter 11 petition was filed, M&T Bank requested that the Pennsylvania Department of Motor Vehicles (DMV) issue duplicate

2

titles to the vehicles which Hunyady was unable to sell at the 2002 auction. DMV issued those duplicate certificates each signifying the lien in favor of M&T Bank.

Prior to the 2003 sale, Hunyady asked that M&T Bank execute releases of the liens on the titles of the vehicles to be sold. The stated reason was to maximize the proceeds derived from the sale of the vehicles at the auction. M&T Bank executed releases of the liens on the duplicate titles and delivered the certificates of title to Hunyady in advance of the 2003 sale. The auction took place, and the proceeds are being held by M&T Bank in an escrow account under the terms of a stipulation between M&T Bank and Travelers.

## DISCUSSION

The issue is whether the execution of the releases of the liens on the certificates of title of the vehicles sold at auction in 2002 and 2003 constituted releases of M&T Bank's liens thereon. The Bankruptcy Court determined that the execution of the releases of the liens constituted a release of the liens and the consequent loss of its secured status in the sale proceeds.

There does not appear to be extensive authority dealing with this issue. The parties focus on *In re Cavalieri*, 142 B.R. 710 (Bankr. E.D. Pa. 1992). In *Cavalieri,* a bank executed a release of the lien on the certificate of title, marked the loan contract "Paid", and delivered the loan contract and the title to the debtor by mail. *Id*. at 712. The action by the bank was a mistake. *Id*. at 711. The court held the lien was released. *Id.* at 718. M&T Bank argues that *Cavalieri* supports their position because the loan agreement was not marked "Paid", and the agreement and title certificate were not delivered to

3

the debtor. Travelers argues that *Cavalieri* supports it, and that the execution of the release is what is significant. Moreover, Travelers argues that delivery of the certificates of title was as good as to the Debtor since they were delivered to its agent, Hunyady.

I hold that the execution of the release of the lien on the certificate of title constituted a release of the lien on the vehicle covered thereby and the proceeds of the sale therefrom, and will affirm the Bankruptcy Court.

It is well established that rights in a bankruptcy proceeding are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). It is clear under Pennsylvania law that a "lien remains of record until the lienholder acts to remove it." *In re: Ambrose*, 148 B.R. 244 (W.D. Pa. 1992) (citing 75 Pa. C.S.A. §1138(a)). Further, it has been held that there is no security interest where a lien is not noted on the title. *In re: Brace*, 163 B.R. 274, 299 (W.D. Pa. 1994). A mistaken execution of a lien release, *In re Cavelieri*, *supra,* and a failure to note a lien on a certificate of title due to a debtor's wrongful conduct, *In re Frank Hoffer*, 34 B.R. 678 (Bankr. E.D. Pa. 1983), do not give courts the ability to reform certificates of title. It follows that when the indicia of ownership, the certificate of title, contains no lien notation, either by its absence, *In re Frank Hoffer*, *supra*, or by its release, *In re Cavelieri*, *supra*, there is no lien.

In *Robinson v. Marshal*, 13 B.R. 195 (E.D. Va. 1981), the lien-holding bank marked a lien on a title satisfied solely for the purpose of transfer so as to allow a second lien on the title. The new title ultimately issued from the Department of Motor Vehicles with the new lien but failed to note the original lien. The court held the bank (original lienholder) had no lien on the automobile. *Robinson* is factually similar to this case. The notation of

4

the lien is the evidence of the lien, and the absence of the notation reflects the absence of the lien.

Section 1135(a) of title 75 of the Pennsylvania Consolidated Statutes[1] does not cover this case. It does not provide the criteria needed to release a lien on a certificate of title. Rather, as Judge Thomas noted, it contains the rules which apply "upon satisfaction" or after satisfaction of the security interest in a vehicle. (Doc. 4 at 134.)

While I understand M&T Bank's contention that the execution of the release of lien was only to facilitate maximizing the proceeds derived from the sale (presumably this would inure to its benefit in any event) and to accommodate Hunyady, these considerations should not determine the law of lien release and the release of security interests. These are matters of public notice, and therefore private arrangements or intentions to retain the lien and security interest cannot govern when the indicia to the public reflects the release of the lien and security interest. When no lien is noted, there simply is no lien.

M&T Bank's argument that the failure to mail the certificates of title to the Debtor is of no consequence. In any event, those in 2002 were given to Debtor's agent. Moreover,

---

[1] (a) Absence of subsequent liens. - Where there are no subsequent liens upon a vehicle, the following rules apply upon the satisfaction of a security interest in the vehicle:

> (1) The outstanding certificate of title shall be mailed or delivered immediately to the owner of the vehicle with proper evidence of satisfaction and release or the lienholder may apply for corrected title to be issued in the name of the owner.
>
> (2) The owner may mail or deliver the certificates of title with proper evidence of satisfaction of the security interest to the department which shall issue a corrected certificate of title without a statement of lines or encumbrances. The corrected certificate of title may also be issued when the outstanding certificates of title cannot be returned and proper evidence is produced that all recorded security interest have been satisfied.

5

given the foregoing analysis, the failure to deliver them to Debtor in 2003 is also of no consequence.

M&T Bank argues that practical considerations in modern commercial transactions must allow M&T Bank to retain its lien. Judge Thomas rightfully noted that rather than executing releases of liens in advance of a sale, a representative of the lien holder could be present at the sale and mark the lien satisfied upon sale.  (Doc. 4 at 133.) (Judge Thomas said "bankrupt" when I think he meant to say "lienholder").

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court will be affirmed.

An appropriate Order follows.

| | |
|---|---|
| August 8, 2005 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MANUFACTURERS AND TRADERS TRUST COMPANY, : : : Appellant, : : vs. : : WYOMING SAND AND STONE COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY, : : : : : Appellees, : : | CIVIL ACTION NO. 3:05-CV-604 (JUDGE CAPUTO) |

**ORDER**

**NOW**, this 8th day of August, 2005, **IT IS HEREBY ORDERED** that the decision of the Bankruptcy Court entered on February 16, 2005, is **AFFIRMED**.

　　　　　　　　　　　　　　　　　　　　/s/ A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　United States District Judge